Terrance J. Slominski, OSB# 81376
David W. Venables, OSB #081291
7100 SW Hampton, Suite 101
Tigard, OR 97223
Telephone      (503) 968-2505
Facsimile       (503) 684-7950
Email:            tjslominski@yahoo.com
Email:            Venables.Slominski.Law@gmail.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| DUSTIN R. RINEHART AND STACEY RINEHART<br><br>Plaintiffs,<br><br>v.<br><br>ONEWEST BANK, FSB, a California headquartered federal savings bank, REGIONAL TRUSTEE SERVICES CORPORATION, a Washington corporation, FEDERAL NATIONAL MORTGAGE ASSOCIATION INC., a Delaware Corporation.<br><br>Defendants. | No. 6:10-cv-06331-AA<br><br><br>PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>**ORAL ARGUMENT REQUESTED** |

## INTRODUCTION

A common idiom describes property as a "bundle of sticks" — a collection of individual rights which, in certain combinations, constitute property.   Defendants, through their actions,

Page 1          PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY
                JUDGMENT

have improperly taken away Plaintiffs' bundle.  For the following reasons, this court should deny Defendant's Motion for Summary Judgment: (1) Plaintiffs' claims of breach of contract and tort are specifically *not* preempted by HOLA, (2) Defendants failed to meet all the pre-requisites for a non-judicial foreclosure by failing to record an assignment to Fannie Mae, (3) based upon Defendant's representations, Plaintiffs' forewent other opportunities to save their home.

## STATEMENT OF FACTS

About May 2009, Plaintiffs started their Loan Modification journey with IndyMac. Rinehart Decl. ¶ 2.  Several months after the original loan modification application, Plainitffs received a request for more information, which Plaintiffs provided to IndyMac.  Rinehart Decl. ¶ 3.  Several months after sending updated information, the Rineharts' loan modification request was denied and they were instructed to fill out a new modification packet, which Plaintiffs completed.  Rinehart Decl. ¶ 4.  In September 2009, Plaintiffs filled out and faxed a downloadable modification packet including a profit and loss statement and other financial information to IndyMac. Rinehart Decl. ¶ 5.  In November of 2009 the modification was denied without explanation.  Rinehart Decl. ¶ 6.  Plaintiffs, however, were again instructed to apply over the phone for a new modification and they filled out a new modification packet.  Rinehart Decl. ¶ 6.  About December 2009, Plaintiffs received a Notice of Sale from Regional Trustee Services which  stated that there would be a foreclosure on February 11, 2010.  Rinehart Decl. ¶ 7.  On February 10, 2010, Plaintiffs filed for protection under Chapter 7 of the bankruptcy code in order to allow the bank to have more time to process the loan modification.  Rinehart Decl. ¶ 8.  About

Page 2  PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

**Slominski & Associates**
*Attorneys at Law*
7100 SW Hampton, Ste 101
Tigard, OR 97223
503-968-2505

April 15, 2010, Plaintiffs received another Notice from Regional setting a sale date of August 16, 2010. Rinehart Decl. ¶ 9. About that time, Plaintiffs filled out HAMP modification paperwork and hired a company, Heartland Loss Mitigation, to assist them in getting a loan modification. Rinehart Decl. ¶ 10. While waiting for the results of the HAMP evaluation, Plaintiffs contacted Kent Anderson about filling for protection under Chapter 13 of the bankruptcy code to reorganize debts and help save their home. Rinehart Decl. ¶ 11. On or about August 14, 2010, Dustin Rinehart contacted IndyMac and was told that the sale had been put on hold and there was no sale date set at that time due to the pending HAMP modification evaluation. Rinehart Decl. ¶ 12. Plaintiffs' followed up and submitted more requested documents. Rinehart Decl. ¶ 13. Dustin Rinehart called IndyMac in late August and was told that there was no pending sale date. Rinehart Decl. ¶ 14. On September 17, 2010, Plaintiffs received a foreclosure notice on their door step stating that the house had been sold on September 16, 2010 and telling my family to move out by Sept 26, 2010. Rinehart Decl. ¶ 15. Around that time, Plaintiffs received a letter dated September 10, 2010, but postmarked September 13, 2010, stating that their HAMP modification application had been denied. Rinehart Decl. ¶ 16.

## **OBJECTIONS TO DEFENDANTS' EVIDENCE**

Plaintiffs object to Defendants' evidence offered in support of the motion as follows:

1. Plaintiff objects to the Kaufman Declaration with respect Ex D as her testimony is not supported by the document. Exhibit D is confusing and does not make sense. It is not an affidavit or a declaration testifying that the foreclosure sale was announced as postponed.

Page 3     PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

2.  Plaintiff objects to the Marks Declaration to the extend that she implies that Exhibit D, the September 10, 2010, rejection letter was sent on September 10, 2010. See Argument below and Ex. B to Rinehart Decl.

## ARGUMENT

### I.  DEFENDANTS HAVE THE BURDEN AS THE MOVING PARTY

Defendants' motion should be denied on the grounds that it fails to establish that no genuine issue of fact exists and fails to establish that they are entitled to judgment as a matter of law. FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law." The Defendants, as the moving parties, have the burden of showing the absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 US 317, 323 (1986). "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Asso.*, 809 F2d 626, 630 (9th Cir 1987) (citing *Anderson v. Liberty Lobby, Inc*., 477 US 242, 248, 106 S Ct 2505, 91 L Ed2d 202 (1986). It is only after Defendants have met their burden that the Plaintiff must go beyond the pleadings to designate facts showing a genine issue for trial. Additionally, the court must view all inferences drawn from the facts "in the light most favorable to the non-moving party." *Id.* at 630. Because all material facts must be viewed in the light most favorable to the non-movant, the court must view the evidence most favorably to the Plaintiffs, Dustin and Stacey Rinehart.

### II.  PLAINTIFFS' CLAIMS NOT PREEMPTED

OneWest invoked Oregon state foreclosure law (ORS §§ 86.705-86.795) to obtain

Page 4             PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY
                   JUDGMENT

Slominski & Associates
*Attorneys at Law*
7100 SW Hampton, Ste 101
Tigard, OR 97223
503-968-2505

Plaintiffs' house; OneWest cannot now shield itself from Plaintiffs' claims that OneWest failed to properly comply with those same laws. There is, however, no federal foreclosure law and "there is a presumption *against* preemption in areas of traditional state regulation." *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 151, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001)(emphasis added). Clearly, HOLA does not preempt the same state non-judicial foreclosure laws that Defendants used to take title to Plaintiffs' home.

### A.    HOLA Preemption Does Not Apply

"OTS's assertion of plenary regulatory authority does not deprive persons harmed by the wrongful acts of savings and loan associations of their basic state common-law-type remedies.*"*
- Hon. Richard Posner*, In re Ocwen Loan Servicing, LLC Mortg. Serv. Lit*., 491 F.3d 638 (7th Cir. 2007).

Plaintiffs are not attempting to regulate loan servicing as a whole. Plaintiffs' claims are based upon the representations made by OneWest and on the actions taken by OneWest. Plaintiff's claims arise under state contract law, the same contract OneWest relies on to have the authority to foreclose, and state tort law. Plaintiffs' lack a remedy other than those provided by these state law claims; accordingly, HOLA preemption does not apply in this case.

### B.    Office of Thrift Supervision Regulations

Enacted in 1933, the Homeowners' Loan Act (HOLA) is "a product of the Great Depression of the 1930's, [and] was intended `to provide emergency relief with respect to home mortgage indebtedness' at a time when as many as half of all home loans in the country were in default." *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 159, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982) (citations omitted). HOLA empowered what is now the Office of Thrift Supervision in the Treasury Department to authorize the creation of federal savings and loan

Page 5          PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Slominski & Associates
*Attorneys at Law*
7100 SW Hampton, Ste 101
Tigard, OR 97223
503-968-2505

associations, to regulate them, and by its regulations to preempt conflicting state law. *Id.* at 161-62, 102 S.Ct. 3014.

12 CFR 560.2(b) explains the types of state laws preempted by HOLA and subsection (c) describes the state laws which are *not* pre-empted by HOLA and "[t]he line between subsections (b) and (c) is both intuitive and reasonably clear." *In re Ocwen* at 491 F.3d 643. The OTS does have "exclusive authority to regulate the savings and loan industry in the sense of fixing fees (including penalties), setting licensing requirements, prescribing certain terms in mortgages, establishing requirements for disclosure of credit information to customers, and setting standards for processing and servicing mortgages." *Id.;* See 12 U.S.C. §§ 1462, 1463, 1464; 12 C.F.R. §§ 500.1, 500.10; "OTS Final Rule,61 Fed.Reg. 50951, 50965.

HOLA specifically does *not* preempt state law claims of (1) Contract and commercial law, (2) Real property law, and (3) Tort law. 12 C.F.R. 560.2(c). The plain language of the regulation shows that Congress did not intend for the HOLA to completely preempt all state law lending regulation; in particular, 12 C.F.R. § 560.2(c) specifically exempts particular state laws from the regulation's preemptive scope. *Bolden v. KB Home* (C.D.Cal. 2008), 618 F. Supp.2d 1196, 1205. All of Plaintiffs' claims in this action (breach of contract and tort) fall within the state law claims which are expressly **not pre-empted** by HOLA under 12 CFR 560.2(b).

The learned Hon. Richard Posner, writing for the 7th Cir. Court of Appeals, interpreted paragraph 12 CFR 560.2(c), on balance, "to mean that [the] OTS's assertion of plenary regulatory authority does not deprive persons harmed by the wrongful acts of savings and loan associations of their basic state common-law-type remedies." *In re Ocwen* at 643. Posner

Page 6          PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY
                JUDGMENT

*Slominski & Associates*
*Attorneys at Law*
7100 SW Hampton, Ste 101
Tigard, OR 97223
503-968-2505

provided two examples, not wholly different from Plaintiffs' allegations, to illustrate the counterintuitive results if HOLA would pre-empt certain state law claims:

> (1) Suppose [a savings and loan association] signs a mortgage agreement with a homeowner that specifies an annual interest rate of 6 percent and a year later bills the homeowner at a rate of 10 percent and when the homeowner refuses to pay institutes foreclosure proceedings. It would be surprising for a federal regulation to forbid the homeowner's state to give the homeowner a defense based on the mortgagee's breach of contract;
>
> (2) Or if the mortgagee ...fraudulently represents to the mortgagor that it will forgive a default, and then forecloses, it would be surprising for a federal regulation to bar a suit for fraud... Enforcement of state law in either of the mortgage-servicing examples above would complement rather than substitute for the federal regulatory scheme.

*In re Ocwen* at 643. Furthermore, "if states could not provide protection to consumers through traditional state-law causes of action with only incidental effect on lending, then federal savings associations effectively could 'use preemption as a shield to avoid adherence to the commitments they make to their customers.'" *Dixon v. Wells Fargo Bank* 11-10368-WGY (D. Mass. 2011 July 22, 2011) *citing McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 164 & n.36 (E.D.N.Y. 2009); *See Also Binetti v. Washington Mut. Bank*, 446 F. Supp. 2d 217, 219 (S.D.N.Y. 2006) (**expressing concern that "the Bank would be completely insulated from liability for its breach [of contract] if the Court were to find plaintiff's claim preempted"**)(emphasis added). Yet Defendants are attempting to shield itself from liability for its own specific failures to fully comply with the contract entered into with Plaintiffs as well as failing to fully comply with the Oregon Trust Deed Act.

The Supreme Court has explained that the "proper inquiry for analysis of complete preemption] focuses on whether Congress intended the federal cause of action to be exclusive,"

Page 7        PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Slominski & Associates
*Attorneys at Law*
7100 SW Hampton, Ste 101
Tigard, OR 97223
503-968-2505

*Beneficial National Bank v. Anderson*, 123 S. Ct. 2058, 539 U.S. 1, 9 n. 5(2003). HOLA, however, does not provide an exclusive cause of action. The OTS has no power to adjudicate disputes between the S & Ls and their customers and so it cannot provide a remedy to persons injured by wrongful acts of savings and loan associations. *In re Ocwen* at 643. Furthermore, HOLA creates no private right to sue to enforce the provisions of the statute or the OTS's regulations. *Burns Int'l Inc. v. Western Savings & Loan Ass'n,* 978 F.2d 533, 535-37 (9th Cir.1992). District courts within the Ninth Circuit that have considered this question have concluded that HOLA and its implementing regulation do not have the effect of complete preemption. *See, e.g., Sarzaba v. Aurora Loan Services,* No. 10cv1569, 2010 WL 3385062, at *3 (S.D. Cal. Aug. 26, 2010); *Pazos v. Wachovia Mortg.*, No. CV 10-2732, 2010 WL 3171082, at *3-4 (C.D. Cal. Aug. 10, 2010);

*Silvas v. E\*Trade Mortg. Corp.,* 514 F.3d 1001 (9th Cir., 2008), cited by Defendants, presents the types of claims pre-empted by HOLA. *Silvas* involved a class action brought against E\*TRADE for committing unlawful, unfair, and deceptive conduct in violation of California's Unfair Competition Law ("UCL"), §§ 17200 and, 17500 of the California Business and Professions Code. *Silvas* at 1003. Because these statutory laws purported to impose requirements regarding loan related fees and disclosure and advertising on all loans within the state, the claims were preempted by HOLA. The types of claims brought in *Silvas* (violations of state regulation on fees and disclosures) fall under subsection (b) and are not the types of claims Plaintiffs bring today under subsection (c) ( breach of contract and tort). The OTS itself has stated that not all UDAP statutes are necessarily pre-empted by HOLA and "has indicated...that

Page 8    PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

**Slominski & Associates**
*Attorneys at Law*
7100 SW Hampton, Ste 101
Tigard, OR 97223
503-968-2505

it [HOLA] does not intend to preempt state laws that establish the basic norms that undergird commercial transactions...While the DAP may affect lending relationships, the impact on lending appears to be only incidental to the primary purpose of the statute." *In re Ocwen* at 644.

### C.    Oregon Cases

Defendants are wrong that this case is "directly controlled by *Copeland-Turner* and *Guerrero.*" *Memorandum* at p.12.  This court is not bound by another unreported case within this district and is not bound by an unreported case from another district, even if Defendants' believe the holdings to be persuasive.  Simply put, neither case controls this court's evaluation of the claims raised by Plaintiffs in this case.  With all due respect to Judge Hernandez, the claims raised by Plaintiffs in *Thomas v. OneWest* were not the type of claims that attempted to regulate lending or servicing in a significant way; they were claims to hold OneWest accountable for its own actions.  As such, they fell squarely within the subsection (c) type claims (tort and breach of contract) which HOLA specifically does *not* preempt. HOLA should not have been used as a shield to prevent the thrift from being held accountable for its actions in *Thomas* and it should not be used to shield the Rineharts' claims in this case.

### D.    Affirmative Defense of Preemption Not Pled in Responsive Pleading

Federal preemption is an affirmative defense upon which the defendants bear the burden of proof.  *Brown v. Earthboard Sports USA, Inc*., 481 F. 3d 901, 912 (CA6 2007).  Because preemption is an affirmative defense, Rule 8(c) required OneWest to plead the preemption defense in its answer.  *See Sherman v. Winco Fireworks, Inc.,* 532 F.3d 709 (8th Cir. 2008).  Generally, failure to plead an affirmative defense results in a waiver of that defense.  First Union

Page 9         PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY
                JUDGMENT

**Slominski & Associates**
*Attorneys at Law*
7100 SW Hampton, Ste 101
Tigard, OR 97223
503-968-2505

Nat'l Bank v. Pictet Overseas Trust Corp., 477 F.3d 616, 622 (8th Cir.2007). "The very fact that our court treats preemption as an affirmative defense presupposes that, in a typical case, a diligent defendant will be able to plead the defense on the basis of the complaint alone, at the onset of the litigation. Here, no change in the law, no newly discovered facts, or any other changed circumstance made the preemption defense more viable after the scheduling deadline for amending pleadings." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709 (8th Cir., 2008). And as the First Circuit has noted, "a defendant who fails to assert an affirmative defense at all, or who asserts it in a largely uninformative way, acts at his peril." See, e.g., FDIC v. Ramirez-Rivera, 869 F.2d 624, 626 (1st Cir.1989). Defendant's affirmative defense should have been apparent at the outset of this case, yet Defendants did not raise it in any responsive pleading and did not officially raise it until its motion for summary judgment. Accordingly, Defendant has waived the right to asset federal preemption as an affirmative defense.

### III.    ESTOPPEL

As an initial matter, Plaintiffs' equitable claims of estoppel in case do not attempt to regulate OneWest's servicing within the state of Oregon and do not directly affect OneWest's lending or servicing effots in Oregon in any significant way. Plaintiffs' estoppel claim fits squarely within the subsection (c) list of state law claims which are specifically *not pre-empted*.

Defendants' citation to *Neiss v. Ehlers*, 135 Or App 218, 223 (1995) to support their contention that Plaintiff's claim based on promissory estoppel must fail is wrong. In *Neiss*, the court stated, "[i]n our view, the better reasoning supports the conclusion that promissory estoppel can apply, under appropriate circumstances, to promises that are indefinite or incomplete,

Page 10        PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY
                JUDGMENT

Slominski & Associates
*Attorneys at Law*
7100 SW Hampton, Ste 101
Tigard, OR 97223
503-968-2505

including agreements to agree." *Id.* at 228.  The *Neiss* Court further recognized the statements by the Colorado Supreme Court and others by stating, "[t]he doctrine of promissory estoppel encourages fair dealing in business relationships and discourages conduct which unreasonably causes foreseeable economic loss because of action or inaction induced by a specific promise." Justifiable reliance on the representations of another is the gist of this action. *Id.* at 227.  *Neiss* cited the reasoning of *Vigoda v. Denver Urban Renewal Authority*, 646 P.2d 900, 905, which states that "[t]he purpose of promissory estoppel is to provide a remedy, under certain circumstances, to those who rely to their detriment upon promises which the promisor should have reasonably expected to induce such reliance. In the absence of a promissory estoppel cause of action, these promises would not be enforceable, generally due to a lack of consideration or a failure of the parties to reach a mutual agreement." *Neiss* at 705.

The doctrine of promissory estoppel as been extended further to include the enforcement of agreements to negotiate as long as they the terms which are to ne negotiated are sufficiently definite.  *Logan v. Sivers*, 207 Or. App. 231, 239-242, 141 P.3d 589 (2006).  Plaintiffs and OneWest essentially had agreed to negotiate over the terms of a modification. Once the negotiation ended the parties could assert their respective rights and remedies.  OneWest could then continue its foreclose efforts and Plaintiffs could file for bankruptcy or seek a state court injunction.  Good faith and fair dealing required that OneWest give Plaintiffs reasonable notice of their intent to hold the foreclosure sale.

### IV. DEFENDANTS FAILED TO FOLLOW HAMP GUIDELINES

Page 11     PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY
               JUDGMENT

Slominski & Associates
*Attorneys at Law*
7100 SW Hampton, Ste 101
Tigard, OR 97223
503-968-2505

As Defendants acknowledge, OneWest was a participating servicer in the Making Home Affordable modification plan, which is "a federally funded program that incentivizes participating servicers, such as OneWest, to enter into agreements with struggling homeowners to make adjustments to existing mortgage obligations." *See Fletcher v. Onewest Bank,* No. 10C 4682*,* p.3 *(*N.D. Ill. June 30, 2011)   Plaintiffs are not claiming that they were wrongfully denied a HAMP modification or that they were entitled to a modification.  Plaintiffs, however, do contend that, while OneWest was processing Plaintiffs for a HAMP modification, the parties agreed that OneWest would not foreclosure Plaintiffs' home.  The disclosure received by Plaintiffs in their HAMP modification packet state "[d]uring the HAMP evaluation period, the subject property for which the completed application has been received will not be referred to foreclosure or be sold at foreclosure sale if the process has already been initiated, except in limited circumstances."  See Ex. 1 to Rinehart Decl.  The requirement that foreclosure activities be suspended is greatly emphasized on the Making Home Affordable government website, which states:

> Participating servicers may not refer a loan for foreclosure sale or proceed with a foreclosure sale on an eligible loan until the homeowner has been evaluated for HAMP and, if eligible, a trial modification offer has been made. Participating servicers must use reasonable efforts to contact homeowners facing foreclosure to determine their eligibility, including in-person contacts at the servicer's discretion. Foreclosure sales may not be conducted while the loan is being considered for a modification or during the trial period.

U.S. Govt., http://www.makinghomeaffordable.gov/faqs/homeowner-faqs/Pages/default.aspx (accessed November 16, 2011).  Part of evaluation process is notifying a borrower that the evaluation has terminated.  Plaintiffs did not receive the denial letter until after Defendants conducted the foreclosure, which was postmarked on September 13, 2010, only three days before

Page 12        PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY
               JUDGMENT

Slominski & Associates
*Attorneys at Law*
7100 SW Hampton, Ste 101
Tigard, OR 97223
503-968-2505

the sale.  See Ex. B to Rinehart Decl.  Accordingly, although Plaintiffs' may not have been entitled to receive a modification, OneWest's evaluation of Plaintiffs' eligibility was a temporary forbearance in which there was no present default and its failure to timely notify Plaintiffs that they did not qualify should have precluded Defendants from foreclosing on September 16, 2010.

V.     **DEFENDANT FAILED TO ADEQUATELY COMPLY WITH OREGON TRUST DEED ACT WHEN PURUSING NON-JUDICIAL FORECLOSURE**

The Oregon Court of Appeals, in *Staffordshire v. Cal-Western Reconveyance,* stated that the "power of sale is subject to strict statutory rules designed to protect the grantor and noted that the Oregon Trust Deed Act "represents a well-coordinated statutory scheme to **protect grantors from the unauthorized foreclosure and wrongful sale of property.**" *Staffordshire v. Cal-Western Reconveyance,* 149 P.3d 150, 157, 209 Or. pp. 528 (Or. 2006)(emphasis added).  The *Staffordshire* court also "[saw] no basis for holding that a foreclosure sale entered into in violation of [these] statutory prohibition[s] should be enforced."  *Id.* at 158.

To enjoy the benefits of its non-judicial remedy, a secured creditor should bear the significant burden of carefully satisfying all procedural requirements imposed by statute and case law. *See Foreclosing Security Interests* (1997 rev. with 2005 cum. supp.) Chapter 7, Self-Help Remedies Under the Uniform Commercial Code, §7.1.  As Judge Panner recently noted in *Hooker v. Northwest Trustee Services,* "foreclosure by advertisement and sale, which is designed to take place outside of any judicial review, necessarily relies on the foreclosing party to accurately review and assess its own authority to foreclose. Considering that the non-judicial foreclosure of one's home is a particularly harsh event, and given the numerous problems I see in nearly every non-judicial foreclosure case I preside over, a procedure relying on a bank or

Page 13         PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

trustee to self-assess its own authority to foreclose is deeply troubling to me." *Hooker v. Northwest Trustee Services*,10-3111-PA, p. 13 (D. Or. May 25, 2011).

A.     **Defendants Failed to Record All Assignments**

ORS 86.735 sets forth the perquisites that a beneficiary and trustee must all be met before a non-judicial sale can occur: (1) the trust deed and any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in the mortgage records, (2) a present default by the grantor or other person owing an obligation, (3) the trustee or beneficiary has filed a notice of default, and (4) no action has been instituted to recover the debt or any part of it then remaining secured by the trust deed. See ORS 86.735.

Defendants failed to satisfy the first requirement.  At the time of the foreclosure, Fannie Mae, not OneWest, was the beneficiary of Plaintiffs' trust deed, yet no trust deed assignment to Fannie Mae was ever recorded.  As OneWest's own logs show, the "Property reverted **back to beneficiary** at sale today."  See Ex. A to Venables Decl.  Defendants, in their answer, admit that the property went to Fannie Mae. Anwer ¶ 13.  Clearly, Fannie Mae was the actual beneficiary at the time as it reverted back to Fannie Mae at the foreclosure.  Further support for Fannie Mae as the beneficiary is found in the MERS Servicer ID records, which lists Fannie Mae, and not OneWest, as the last Investor (owner) of Plaintiffs' trust deed.  See Ex. B to Venables Decl.  If Fannie Mae did in fact deliver the consideration as stated in the Trustee's Deed to the trustee, it should be able to provide evidence of such consideration.

Page 14    PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

**Slominski & Associates**
*Attorneys at Law*
7100 SW Hampton, Ste 101
Tigard, OR 97223
503-968-2505

The problem for Defendants run into is that Fannie Mae's beneficial interest in Plaintiffs' mortgage was not recorded in the county records before the sale. *See Burgett v. MERS et al,* 6:09-cv-06244-HO, p. (D. Or. Oct. 20, 2010)(stating "ORS 86.735 provides that if foreclosure by sale is pursued, all prior unrecorded assignments must be filed in connection with the foreclosure.") Simply put, the law requires this action to be done in order to foreclose without court oversight and it was not done. As the Oregon Appellate Court stated in *Staffordshire,* a a foreclosure sale entered into in violation of these statutory prohibitions should not be enforced. *Staffordshire* at 158.

### B. No Present Default Existed at the Time of the Foreclosure

As stated above, due to the HAMP modification evaluation process, no present default existed, which is the second requirement for a non-judicial foreclosure to occur.

### C. Public Proclamation under ORS 86.755

ORS 86.755(2) provides that "[t]he trustee or the attorney for the trustee, or an agent that the trustee or the attorney conducting the sale designates, may postpone the sale for one or more periods totaling not more than 180 days from the original sale date, giving notice of each adjournment by public proclamation made at the time and place set for sale." Attached as Ex. D to the Kaufman declaration is a document that purports to have been received on April 14, 2010, more than five months before the sale. Such a statement calls into question the veracity of the contents of the affidavit.

### VI. MERS SYSTEM

Page 15    PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Defendants argue that there have been no assignments of the deed of trust presumably because their design is to not have any documents that purport to be an assignment. Instead they transfer the note. As Defendants state at page 5 of their memorandum "Once fully executed, the deed of trust is recorded and MERS thereby becomes the beneficiary of record. MERS retains its status as beneficiary of record when ownership interests in the note or loan servicing rights are transferred from one MERS Member to another." They ignore the fact that the transfer of the note also transfers the security, i.e. the deed of trust. The Supreme Court has stated "this has long been the law throughout the United States: when a note secured by a mortgage is transferred, 'transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter." Carpenter v. Longan, 83 U.S. 271, 275 (1872).

In the MERS system, the actual beneficiary of the loan and trust deed, the lender, records MERS as a beneficiary and then makes assignments using MERS without recording those assignments in the county records, although such assignments are required for foreclosing non-judicially under ORS 86.735. While MERS contends that this is a benefit, the "benefit" is a loss for the county because "most counties charge a fee, ranging from $25 to $50, to record the assignment, and use these fees to cover the cost of maintaining the real property records. Some counties also use recording fees to fund their court systems, legal aid organizations, low income housing programs, or schools. In this respect, MERS's role in acting as a mortgagee of record in nominee capacity is simply a tax evasion tool." Christopher L. Peterson, *Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System,* 78 U. Cin. L. Rev. 1359, 1362 (2010). Moreover, contrary to Defendants' assertions, using MERS as the

Page 16        PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY
               JUDGMENT

Slominski & Associates
*Attorneys at Law*
7100 SW Hampton, Ste 101
Tigard, OR 97223
503-968-2505

named beneficiary does not make it easier to determine who owns a particular mortgage. The MERS system attempts to privatize recording and hides who the actual beneficiary of trust deed from the public. If a loan is a non-MERS loan, however, assignees would record their assignments.

As the trust deed points out, the trust deed was made to secure payment to the lender, IndyMac, not MERS.  In *Hooker v. NWTS,* the court similarly noted that *"*the deed makes clear that MERS is not 'the person for whose benefit a trust deed is given'" and that the lender, not MERS, "may invoke the power of sale and any other remedies permitted by Applicable Law."*Hooker* at 6.  In *MERS v. Nebraska Dept. of Banking*, 704 N.W.2d 784, 270 Neb. 529 (Neb. 2005), MERS explained to the court that " **MERS does not take applications, underwrite loans, make decisions on whether to extend credit, collect mortgage payments, hold escrows for taxes and insurance, or provide any loan servicing functions whatsoever**" and that  "MERS does not receive compensation from consumers." *Id.* at 788(emphasis added).

This court should not be concerned necessarily with the impact of an adverse decision on MERS mortgages such as the Rinehart's', but as a persuasive opinion from the bankruptcy court in the Eastern District of New York notes:

> "the Court recognizes that an adverse ruling regarding MERS's authority to assign mortgages or act on behalf of its member/lenders could have a significant impact on MERS and upon the lenders which do business with MERS throughout the United States. However, **the Court must resolve the instant matter by applying the laws as they exist today.**  It is up to the legislative branch, if it chooses, to amend the current statutes to confer upon MERS the requisite authority to assign mortgages under its current business practices. MERS and its partners made the decision to create and operate under a business model that was designed in large part to avoid the requirements of the traditional mortgage recording process.  This Court does not accept the argument that because MERS may be involved with 50% of all residential mortgages in the country,

Page 17         PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY
                JUDGMENT

Slominski & Associates
*Attorneys at Law*
7100 SW Hampton, Ste 101
Tigard, OR 97223
503-968-2505

    that is reason enough for this Court to turn a blind eye to the fact that this process does not comply with the law."

*In re Agard* (Bankr. E.D.N.Y. 2011) Case # 810-77338 (emphasis added).

### VII. WRONGFUL FORECLOSURE

Plaintiffs are not asking the court to create or recognize a new tort. There is no legal requirement that a Plaintiff or court place a particular name on a cause of action; it is merely helpful to tag a tort for reference. Over the years torts often change names as the courts and sometimes the legislature recognize new versions, due to technology and a changing society. In *Urban Renewal Agency v. Lackey*, 275 Or. 35, 38 (1976) the court said "[i]n our view, and as held in *Gray v. Hammond Lumber Co. et* al, 113 Or. 570, 576, 232 P. 637, 233 P. 561, 234 P. 261 (1925): 'When statutes are enacted which undertake to declare rights and establish a standard of conduct for their protection, any acts or omissions in violation of such statute, which destroy the enjoyment of such rights, may be treated as legal wrongs or torts.' " *See Also* Prosser, Law of Torts § 36 (4th ed 1971). In this case, Plaintiffs contend that they had both a contract and the benefit of a statutory scheme. When the enjoyment of those rights were destroyed, they suffered a wrong and have the right to seek a remedy for that wrong in either breach of contract or tort or both.

If a lender improperly forecloses its security interest in a car, that lender could be liable to the borrower for a conversion. *Johnson v. Beneficial Finance Co.*, 404 P.2d 198, 241 Or. 115 (Or., 1965) (Plaintiff awarded compensatory and punitive damages for lender's willful disregard of plaintiff's property rights). If would defy logic, then, that a lender who improperly forecloses one's home would be free from any tort liability. In *Hulse v. Ocwen Federal Bank, Fsb*, 195 F.

Page 18    PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

*Slominski & Associates*
*Attorneys at Law*
7100 SW Hampton, Ste 101
Tigard, OR 97223
503-968-2505

Supp. 2d 1188 (D. Or. 2002) the court, in its footnotes, stated that "plaintiffs could possibly pursue a claim for wrongful foreclosure under Oregon's non-judicial foreclosure statutes based on the invalid assignment allegations." In *In Re: Donald E. McCoy,* No. 10-6224-fra (Bankr.Or. February 7, 2011), the bankruptcy court stated that "the Complaint sets out a plausible claim that one or more assignments...were unrecorded" and so the court denied the Defendants' motion to dismiss Plaintiff's claim for wrongful foreclosure. Pages 5-6.

Because there is no binding precedent from the Oregon Supreme court, the federal court must predict how the Oregon Supreme Court would resolve the issue and then apply the law accordingly. In cases involving personal rather than real property, the Oregon Supreme Court has decided that actions may be brought for wrongful foreclosure of a security interest in personal property by way of conversion. *See Johnson.* It follows that a similar action could be brought against a lender who improperly forecloses a security interest in a borrower's home. A borrower should not be left without a sufficient remedy to make him/herself whole. Support for this is found in the Oregon Constitution, which in Article 1, Section 10 guarantees that "...every man shall have remedy by due course of law for injury done him in his person, **property**, or reputation." Whatever the court decides to call this cause of action, wrongful foreclosure or other, Plaintiffs are constitutionally guaranteed to have a remedy against Defendants for their actions. The point is that Plaintiffs have brought an action in tort for the loss of their property due to the acts of defendants. Had Defendants merely trespassed and damaged Plaintiffs' property, they would certainly have a tort claim but here, Defendants took the whole thing. Traditionally, it has been held that an action for conversion of real property could not be brought

Page 19        PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY
               JUDGMENT

**Slominski & Associates**
*Attorneys at Law*
7100 SW Hampton, Ste 101
Tigard, OR 97223
503-968-2505

because real property could not be converted, or so it was thought.  The tort does not need a label but wrongful foreclosure seems to fit.

### VIII.  CONCLUSION

For the reasons provided above, this court should deny Defendants' motion for summary judgment.  Plaintiffs' tort and breach of contract claims, claims arising out of the same contract used by Defendants in foreclosing, are expressly not pre-empted by HOLA.  Additionally Defendants failed to meet all pre-requisites to foreclose non-judicially and should be estopped from asserting the right to foreclosure after agreeing not to foreclose while evaluating Plaintiffs' loan modification.

Dated this 17th day of November, 2011.

                                             SLOMINSKI & ASSOCIATES

                                             /s/ David W. Venables  
                                             Terrance J. Slominski , OSB# 81376  
                                             David W. Venables, OSB#081291  
                                             7100 SW Hampton St. Ste 101  
                                             Tigard, OR 97223  
                                             Attorney for Plaintiffs  
                                             Trial Attorney: Same

Page 20    PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Slominski & Associates  
*Attorneys at Law*  
7100 SW Hampton, Ste 101  
Tigard, OR 97223  
503-968-2505