IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DUSTIN R. RINEHART AND
STACEY RINEHART,

               Plaintiffs,

      v.

ONEWEST BANK, FSB, a California
headquartered federal savings bank,
REGIONAL TRUSTEE SERVICES
CORPORATION, a Washington
corporation, FEDERAL NATIONAL
MORTGAGE ASSOCIATION INC.,
a Delaware corporation,

               Defendants.

Civ. No. 6:10-cv-6331-AA
OPINION AND ORDER

_____

Terrance J. Slominski
David W. Venables
7100 SW Hampton, Suite 101
Tigard, OR 97223
        Attorneys for plaintiffs

1     - OPINION AND ORDER

William L. Larkins, Jr.
Danielle J. Hunsaker
Larkins Vacura LLP
621 Morrison St., Suite 1450
Portland, OR 97205
      Attorneys for defendants OneWest Bank, FSB
      and Federal National Mortgage Association, Inc.

AIKEN, Chief Judge:

Plaintiffs filed suit alleging breach of contract and wrongful foreclosure arising from the nonjudicial foreclosure of their property in September 2010. Plaintiffs contend that defendants were estopped from pursuing foreclosure and that the trustee sale of their property was without legal authority and void under the Oregon Trust Deed Act (OTDA). Plaintiffs seek damages and a declaration that they are the lawful owners of the property. Defendants OneWest Bank FSB (OneWest) and Federal National Mortgage Association, Inc. (Fannie Mae) now move for summary judgment on plaintiffs' claims. Defendants maintain that plaintiffs' estoppel claim is preempted by the Home Owner's Loan Act of 1933 (HOLA) and the Home Affordable Modification Program (HAMP), and that plaintiffs' remaining claims for wrongful foreclosure lack merit under Oregon law.

Defendants' motion is granted in part with respect to plaintiffs' estoppel claim and denied with leave to renew in all other respects. In light of this Court's recent certification of questions to the Oregon Supreme Court, plaintiffs' remaining claims are stayed.

## BACKGROUND

In 2003, plaintiffs purchased real property located at 26947 Petzold Rd. Eugene, Oregon, for $257,500. On or about December 12, 2006, plaintiffs refinanced the property through a loan agreement (the Note) with IndyMac Bank, F.S.B (IndyMac Bank). Under the terms of the Note, plaintiffs were required to make monthly payments in the amount of $2,646.28.

2    - OPINION AND ORDER

Plaintiff's repayment obligation under the Note was secured by a deed of trust (DOT) to the property. The DOT identifies plaintiffs as the "Borrower," IndyMac Bank as the "Lender," First American Title Insurance Company as the "Trustee," and Mortgage Electronic Registration Systems, Inc. (MERS) as "the beneficiary," acting "solely as a nominee for Lender and Lender's successors and assigns." Kaufman Decl., Ex. A at 1-2, 3.

The DOT also provides:

> Borrower understands that MERS holds only legal title to the interests granted by Borrower in [the DOT], but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender, including, but not limited to, releasing and canceling [the DOT].

Id. Ex. A at 4.

The DOT further states that "[t]he Note or a partial interest in the Note (together with [the DOT]) can be sold one or more times without prior notice to Borrower." Id. Ex. A at 12. The DOT was recorded in Lane County on December 19, 2006.

In mid- to late-2007, Dustin Rinehart experienced a significant downturn in his auto repair business, and plaintiffs fell behind on their loan payments under the Note.

In November 2008, plaintiffs received a modification that "cured" their delinquency by adding the delinquent amount back to the loan principal, though the modification did not change their monthly payment amount or interest rate. Hunsaker Decl. Ex. A at 52-56. Plaintiffs remained unable to make their monthly payments, and they again fell delinquent.

Several months prior, on July 11, 2008 IndyMac Bank had been deemed a "failed financial institution" and closed by federal regulatory authorities:

IndyMac Bank, FSB was closed by the Office of Thrift Supervision ("OTS") and the Federal Deposit Insurance Corporation ("FDIC") was appointed as Receiver. Contemporaneously, the OTS also chartered a new institution, IndyMac Federal Bank, FSB ("IndyMac Federal"), placed IndyMac Federal in conservatorship, appointed the FDIC Conservator, and effectuated the transfer of substantially all of IndyMac Bank's assets to IndyMac Federal. Thereafter, in March 2009, the FDIC announced that IndyMac Federal had been sold to OneWest Bank, FSB, which agreed to purchase substantially all of IndyMac Federal's assets. At the same time, the OTS appointed the FDIC as Receiver for IndyMac Federal.

Combs v. FDIC, 2009 WL 2843939, at *1 (E.D. Mich. Aug. 31, 2009). Apparently, IndyMac Bank retained the rights to plaintiffs' Note as of July 2008, which were then transferred to IndyMac Federal by operation of federal law. See Defs.' Suppl. Reply at 2-3.

In March 2009, OneWest obtained the servicing rights to the Note. IndyMac Mortgage Services, a division of OneWest, began servicing plaintiffs' loan. Hunsaker Decl. Ex. A at 50.

After becoming the loan servicer, OneWest claims that it made efforts to assist plaintiffs and cure their default. OneWest asserts that in July 2009, it offered plaintiffs a repayment plan and forbearance agreement. Hunsaker Decl. Ex. A at 58-62. Plaintiffs executed the agreement, though they still were unable to maintain the payments.

On September 30, 2009, MERS "as nominee for IndyMac Bank F.S.B." assigned "all beneficial interest" in the DOT to OneWest "for value received." Marks Decl. Ex. C. The Assignment of Deed of Trust was signed by Brian Burnett as an "authorized signatory" for MERS "as nominee for IndyMac Bank, F.S.B." and recorded on October 8, 2009. Id.

Also on September 30, 2009, OneWest (as the newly-assigned beneficiary) appointed defendant Regional Trustee Services Corporation (Regional) as the successor trustee. Marks Decl. Ex. D. The Appointment of Successor Trustee also was signed by Brian Burnett as an "authorized signatory" for OneWest and recorded on October 8, 2009. Id. On the same day, Regional recorded

4    - OPINION AND ORDER

a Notice of Default and Election to Sell, with a trustee sale of plaintiffs' property scheduled for February 11, 2010. Kaufman Decl. Ex. B.

Around that time, OneWest and plaintiffs entered into a forbearance agreement. However, plaintiffs were unable to meet the conditions of the forbearance agreement, and on February 10, 2010, plaintiffs filed for bankruptcy. Hunsaker Decl., Ex. B.

On April 12, 2010, Regional recorded a new Notice of Default and Election to Sell, with the trustee sale noticed for August 16, 2010. Kaufman Decl. Ex. C.

In May 2010, plaintiffs received a discharge in bankruptcy that eliminated several of their debts and improved their financial condition. Plaintiffs then filed a new loan modification application with OneWest.

On or about August 14, 2010, plaintiffs called IndyMac Mortgage and were told that the foreclosure sale "had been put on hold" and no date for the sale was scheduled due to the pending modification application. Rinehart Decl. at 3.

On August 16, 2010, a process server appeared at the Lane County Courthouse and "declared" that the trustee sale for plaintiff's property was continued until September 16, 2010. Kaufman Decl. Ex. D. Neither OneWest nor Regional contacted plaintiffs to inform them that the trustee sale had been continued or rescheduled.

Plaintiffs called IndyMac Mortgage at the end of August and were informed that the trustee sale had not been rescheduled. Rinehart Decl. at 3. Plaintiffs continued to monitor the status of their loan modification application on IndyMac Mortgage's website.

By letter dated September 10, 2010 and postmarked September 13, 2010, OneWest notified plaintiffs that their loan modification request was denied. Marks Decl. Ex. A; Rinehart Decl. Ex. B.

5    - OPINION AND ORDER

On September 16, 2010, Regional sold plaintiffs' property at a trustee sale. After the sale, the property reverted back to Fannie Mae, the Note holder at the time of sale. A trustee's deed was recorded on September 27, 2010. Kaufman Decl. Ex. E.

Plaintiffs did not receive notice of the trustee sale until September 17, 2010, when they received a foreclosure notice stating that their home had been sold and they were required to vacate the residence by September 26, 2010. Rinehart Decl. at 3. Plaintiffs maintain that IndyMac Mortgage's website indicated that their application remained pending, even after the trustee sale.

On October 12, 2010, plaintiffs filed this action. Plaintiffs assert that OneWest was estopped from authorizing the trustee sale until plaintiffs were given notice that their application had been denied and the trustee sale would proceed. Plaintiffs also contend that the trustee sale was void and without legal effect because MERS is not a proper beneficiary of the DOT and assignments of the DOT were not recorded at the time of the trustee sale in violation of the OTDA. See Or. Rev. Stat. §§ 86.705; 86.735.

Defendants moved for summary judgment on plaintiffs' claims, and on February 28, 2012, the court heard oral argument.

On April 2, 2012, this Court certified the following four questions to the Oregon Supreme Court pursuant to Or. Rev. Stat. § 28.200 and L.R. 83-15(a):

1.    May an entity such as MERS, that is neither a lender nor successor to a lender, be a "beneficiary" as that term is used in the Oregon Trust Deed Act?

2.    May MERS be designated as beneficiary under the Oregon Trust Deed Act where the trust deed provides that MERS "holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests"?

6    - OPINION AND ORDER

3.    Does the transfer of a promissory note from the lender to a successor result in an automatic assignment of the securing trust deed that must be recorded prior to the commencement of nonjudicial foreclosure proceedings under ORS 86.735(1)?

4.    Does the Oregon Trust Deed Act allow MERS to retain and transfer legal title to a trust deed as nominee for the lender, after the note secured by the trust deed is transferred from the lender to a successor or series of successors?

See Brandrup v. ReconTrust Co., Civ. No. 3:11-cv-1390-HZ (D. Or. Apr. 2, 2012) (doc. 20). To date, the Oregon Supreme Court has not issued a decision regarding the certified questions.

## DISCUSSION

### A. Promissory Estoppel and Notice of Trustee Sale

Plaintiffs claim that OneWest was estopped from proceeding with the trustee sale, because OneWest promised plaintiffs that it would not reinitiate foreclosure proceedings during the pendency of their loan modification application. Plaintiffs assert that they took no further action to cure their default while waiting for approval, and that they would have pursued other "strategies" to keep their home had they known OneWest would proceed with the trustee sale.

Defendants maintain that plaintiffs' estoppel claim is preempted by HOLA and/or HAMP. See Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1005 (9th Cir. 2008) ("Through HOLA, Congress gave the Office of Thrift Supervision ("OTS") broad authority to issue regulations governing thrifts.") (citing 12 U.S.C. § 1464); see also 12 C.F.R. § 560.2(a) (stating that the Office of Thrift Supervision "occupies the entire field of lending regulation," including the processing and servicing of loans).

Regardless of preemption, plaintiffs concede that no representative of OneWest or IndyMac Mortgage promised approval of their application or permanent forbearance from foreclosure. Even

if OneWest represented that it would not foreclose while plaintiffs' application was pending, OneWest did not proceed with the trustee sale until plaintiffs' application had been denied. Thus, plaintiff cannot maintain an estoppel claim based on OneWest's representation that it would not foreclose while reviewing plaintiffs' application.

Plaintiffs also argue that OneWest was estopped from proceeding with foreclosure without providing plaintiffs with "reasonable notice of their intent to hold the foreclosure sale." Pls.' Resp. at 11. Plaintiffs emphasize that in late August 2010 OneWest represented that no foreclosure sale was scheduled but nonetheless proceeded with the trustee sale on September 16, 2010.

Defendants again argue that this claim is preempted by HOLA and/or HAMP. I disagree. Plaintiffs do not challenge OneWest's loan servicing or modification practices; rather, plaintiffs challenge the alleged misrepresentation that the trustee sale had not been scheduled. Thus, this claim "only incidentally" relates to One West's lending operations and is not preempted by HOLA. 12 C.F.R. § 560.2(c)(4) (state tort laws are not preempted "to the extent that they only incidentally affect the lending operations of Federal savings associations"). For the same reason, I find no preemption under HAMP. Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 579-80 (7th Cir. 2012).

Defendants further contend that they were not required to provide additional notice of foreclosure proceedings once plaintiffs' application was denied. Defendants note that Regional recorded and gave notice of the trustee sale scheduled for August 16, 2010, and on that date a process server appeared at the sale and "declared" a postponement until September 16, 2010. Thus, defendants contend that they provided the requisite statutory notice of the continuance through "public proclamation." See *former* Or. Rev. Stat. § 86.755(2) (2009) (trustee sale may be postponed "by public proclamation made at the time and place set for sale").

8    - OPINION AND ORDER

The problem with defendants' argument is that OneWest, through IndyMac Mortgage, allegedly told plaintiffs that the sale scheduled for August 16 would not proceed and had not been rescheduled. Rinehart Decl. at 3. In other words, though framed in terms of promissory estoppel, plaintiffs contend that OneWest made a fraudulent representation, one that plaintiffs relied on to their detriment. Cocchiara v. Lithia Motors, 247 Or. App. 545, 552, 270 P.3d 350 (2011) (noting that elements of fraudulent representation are similar to those of promissory estoppel).

Given the record before the court, questions of fact exist as to whether OneWest made a misrepresentation, whether plaintiffs relied on it to their detriment, and whether their reliance was justified. Id. Accordingly, summary judgment is denied as to this aspect of plaintiffs' estoppel claim.

B. Violations of the OTDA

Plaintiff alleges that defendants failed to comply with the requirements of the OTDA and therefore lacked the authority to foreclose on plaintiffs' property. Plaintiffs contend that MERS cannot serve as a beneficiary under the OTDA, because it possessed no beneficial interest in the Note and therefore had no authority to assign the DOT. Plaintiffs also argue that transfers of the Note resulted in unrecorded assignments of the DOT, rendering the trustee sale void. Defendants move for summary judgment on grounds that MERS may act as a beneficiary as nominee for the lender and successors under the OTDA and that all assignments of the DOT were recorded properly.

The OTDA was enacted to "'counterbalance the foreclosure advantages given [to] the creditor.'" James v. ReconTrust Co., 2012 WL 653871, *5 (D. Or. Feb. 29, 2012) (quoting Ronald Brady Tippetts, Note, *Trust-Deed History in Oregon*, 44 OR. L. REV. 149, 150 (1965)). Accordingly, a creditor's failure to comply strictly with the statutory process outlined in the OTDA is fatal to any nonjudicial foreclosure proceeding. Id.; Staffordshire Inv., Inc. v. Cal–Western Reconveyance Corp.,

9    - OPINION AND ORDER

209 Or. App. 528, 541-43, 149 P.3d 150 (2006); Baggao v. Mascaro, 77 Or. App. 627, 631-32, 714 P.2d 261 (1986). As such, the OTDA "represents a well-coordinated statutory scheme to protect grantors from the unauthorized foreclosure and wrongful sale of property, while at the same time providing creditors with a quick and efficient remedy against a defaulting grantor . . . without the necessity for judicial action." Staffordshire, 209 Or. App. at 542, 149 P.3d 150.

At the time of the trustee sale in this case, four conditions must have been met to proceed with nonjudicial foreclosure under the OTDA. First, "[t]he trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee" must have been recorded in the county where the property is located. *Former* Or. Rev. Stat. § 86.735(1) (2009). Second, there must have been a default of an obligation secured by the trust deed. Id. § 86.735(2). Third, the trustee or beneficiary must have filed a notice of default and election to sell the property. Id. § 86.735(3). Lastly, no other action may have been instituted to recover the debt secured by the trust. Id. § 86.735(4). The OTDA defines "beneficiary" as the "person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or the person's successor in interest." Or. Rev. Stat. § 86.705(2) (2012); *former* Or. Rev. Stat. § 86.705(1) (2009).

Aside from MERS' status as beneficiary, this case raises serious questions regarding unrecorded assignments of the DOT, given IndyMac Bank's failure, the transfer of assets to IndyMac Federal, and the acquisition of plaintiffs' Note by Fannie Mae at some point. Defendants contend that all necessary assignments of the DOT were recorded, because the transfer of plaintiffs' Note to IndyMac Federal was effectuated by operation of federal law and all holders of the Note were MERS members. Defs.' Suppl. Reply at 3-5. Regardless, the question remains whether these transfers resulted in assignments of the DOT under *Oregon* law.

10    - OPINION AND ORDER

To date, neither the Oregon Court of Appeals nor the Oregon Supreme Court has addressed whether MERS may serve as beneficiary of a DOT or whether transfers of a note result in assignments of the securing trust deed that must be recorded prior to nonjudicial foreclosure. This Court has attempted to resolve these issues, without consensus. See, e.g., James, 2012 WL 653871 (D. Or. Feb. 29, 2012); Reeves v. ReconTrust Co., 2012 WL 652681 (D. Or. Feb. 28, 2012); Beyer v. Bank of Am., 800 F. Supp. 2d 1157 (D. Or. 2011); Hooker v. Nw. Tr. Servs., Inc., 2011 WL 2119103 (D. Or. May 25, 2011); Burgett v. Mortg. Elec. Registration Sys., Inc., 2010 WL 4282105 (D. Or. Oct. 20, 2010). Ultimately, this Court certified four questions to the Oregon Supreme Court to resolve these important issues of Oregon law. See supra pp. 6-7.

The parties' primary arguments raise questions similar to those certified. Therefore, I find it appropriate to stay plaintiffs' claims pending a decision by the Oregon Supreme Court. If certification is declined, defendants may renew their motion.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment (doc. 54) is GRANTED IN PART with respect to plaintiffs' promissory estoppel claim and DENIED in all other respects with leave to renew. This case is STAYED pending a decision by the Oregon Supreme Court regarding the certified questions.

IT IS SO ORDERED.

Dated this ⬧ day of May, 2012.

Ann Aiken
United States District Judge

11    - OPINION AND ORDER